[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10024
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00401-MHT-CSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAMARIAN D. MILLENDER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 2, 2015)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Kamarian Deshawn Millender appeals the district court's denial of his motion to withdraw his guilty plea following his conviction for aggravated identity theft, in violation of 18 U.S.C. § 1028A.  Millender moved to withdraw his guilty plea before sentencing, arguing that the plea was not knowing and voluntary because his retained counsel allegedly gave ineffective assistance.  On appeal, Millender argues that the district court abused its discretion in concluding that his allegations of ineffective assistance did not present a fair and just reason for withdrawal of his guilty plea.  After careful review, we affirm the denial of Millender's motion to withdraw his guilty plea.

## I.

Millender was arrested on February 25, 2014, after police found evidence of identity theft in his vehicle during a search prompted by an alert from a drug-detection dog.  Millender retained Dustin Fowler as his attorney shortly after his arrest. On June 19, Millender, with Fowler's assistance, executed a plea agreement with the government in which he agreed to plead guilty to one count of aggravated identity theft charged in a felony information, and to serve the mandatory term of 24 months' imprisonment for that offense.  *See* 18 U.S.C. § 1028A(a)(1). Millender also executed an "addendum" to the plea agreement in which he agreed to cooperate with the government's investigation, including by giving testimony

2

against co-conspirators at trial.  We refer to both documents collectively as the "plea agreement" unless a reason exists to distinguish between the two.

The plea agreement also provided, in relevant part, that Millender agreed to pay restitution as ordered by the court in an amount that included all losses suffered from his conduct, and not just losses related to the specific count of conviction.  In a factual basis in the plea agreement, Millender admitted that he had acquired stolen identities through his work as a lab technician at a medical facility and that he had "victimized approximately 73 individuals and sought to defraud the IRS out of approximately $536,028," though only about $18,915 in refunds actually issued.  In exchange for Millender's plea, the government agreed not to bring any other charges arising out of the factual basis.

On July 8, a magistrate judge accepted Millender's guilty plea and adjudicated him guilty.[1]  Before accepting his guilty plea, the magistrate judge conducted the plea colloquy required by Rule 11, Fed. R. Crim. P., to ensure that Millender's plea was knowing and voluntary.  *See United States v. Freixas*, 332 F.3d 1314, 1318 (11th Cir. 2003) (listing the three core concerns of Rule 11: (1) that the guilty plea is free from coercion;  (2) that the defendant understands the nature of the charges;  and (3) that the defendant knows and understands the

---

[1] Millender consented to have the magistrate judge conduct his plea colloquy and accept his plea.  *See United States v. Woodard*, 387 F.3d 1329, 1331-34 (11th Cir. 2004).  *But see Brown v. United States*, 748 F.3d 1045, 1071 n.53 (11th Cir. 2014).

3

consequences of his guilty plea).   To that end, the magistrate judge asked Millender a series of questions regarding the plea agreement and his decision to plead guilty, including whether he "had time to read the information and discuss the charge against [him] with Mr. Fowler";  whether he "underst[oo]d the charge against [him]";  whether he was "fully satisfied with Mr. Fowler's representation";  whether he had "an opportunity to read [the plea agreement] and to fully discuss the terms of the plea agreement with Mr. Fowler";  and whether he "underst[oo]d the terms of the plea agreement."   Millender, under oath, responded to each question affirmatively.   Millender also stated that no one had attempted to force him to plead guilty, and that he was in fact guilty of acquiring stolen identities for the purpose of filing fraudulent income-tax returns.   With these and other assurances, Millender's guilty plea was accepted.

Three months later, and a few days before sentencing, Millender wrote a letter to the district court seeking to withdraw his guilty plea based on the ineffective assistance of retained counsel.  The court allowed retained counsel to withdraw, appointed new counsel, and then held a hearing on the matter.

At the hearing on his motion to withdraw his guilty plea, Millender claimed that he was unaware of provisions in his plea agreement relating to his restitution and cooperation obligations because Fowler did not provide him with the full agreement.  Millender also testified about the circumstances of his arrest and his

4

belief that Fowler should have filed a motion to suppress evidence obtained from what Miller viewed as an illegal search of his vehicle.

For his part, Fowler testified that, before Millender signed the agreement, he discussed with Millender the terms of the plea agreement, including the possibility that Millender would have to testify at trial; that Millender stated that he read, understood, and did not have any questions about the plea agreement; and that Millender was provided with full copies of the plea agreement. Fowler also testified that he and Millender discussed filing a motion to suppress based on the circumstances of his arrest, including the likelihood of suppression, but that Millender did not want to pursue suppression because doing so could expose him to indictment on additional charges and the possibility of a much longer sentence.

Following the hearing, the district court entered an order denying Millender's motion to withdraw his guilty plea. The court determined that Millender had been fully informed of the terms of the plea agreement, finding his testimony to the contrary "not credible." As to Fowler's alleged ineffectiveness, the court found that Millender did not want to pursue suppression because of the risk that the government might bring additional charges and increase his sentencing exposure. In light of that strategic choice, the court concluded, whether Fowler had more fully investigated the circumstances of Millender's arrest "would not have altered Millender's decision to plead." Doc. 29 at 8. The court also found

5

that Millender would have been unlikely to succeed on the merits of his suppression claim. Finding no fair and just reason for withdrawal of his guilty plea, the district court denied Millender's motion.

The district court sentenced Millender to serve 24 months' imprisonment and to pay $18,915 in restitution. Millender now appeals the denial of the motion to withdraw his guilty plea.

## II.

We review a district court's denial of a defendant's motion to withdraw his guilty plea for an abuse of discretion. *Freixas*, 332 F.3d at 1316. The district court does not abuse its discretion unless its denial is arbitrary or unreasonable. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). Challenges to the effectiveness of counsel are reviewed *de novo* as a mixed question of law and fact. *Freixas*, 332 F.3d at 1316.

## III.

A district court may permit a defendant to withdraw his guilty plea before sentencing for "any fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). This rule should be liberally construed, but a defendant has "no absolute right to withdraw a guilty plea before sentencing." *United States v. McCarty*, 99 F.3d 383, 385 (11th Cir. 1996). To determine whether a defendant has shown a fair and just reason, a court should "evaluate[] the totality of the circumstances, including: (1) whether

6

close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Freixas*, 332 F.3d at 1318 (internal quotation marks omitted).  The good faith, credibility, and weight of a defendant's assertions in support of these showings are issues for the trial court to decide.  *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988).

Here, the district court did not abuse its discretion in refusing to allow Millender to withdraw his guilty plea.  The district court conducted a hearing on the matter, heard extensive testimony from Millender and Fowler regarding the circumstances under which Millender's plea was entered, and then issued an order explaining its reasons for denying Millender's motion.  Millender has not shown that the district court's decision was arbitrary or unreasonable.  *See Brehm*, 442 F.3d at 1298.

The district court was well within its discretion to find not credible Millender's testimony that he was unaware of the contents of the plea agreement. *See Buckles*, 843 F.2d at 472.  In critical respects, Millender's testimony at the plea withdrawal hearing was contradicted by his statements under oath during the plea hearing.  Specifically, at the plea hearing, Millender, a college graduate, told the magistrate judge that he read the plea agreement, fully discussed its terms with

7

Fowler, and understood its terms.  A strong presumption exists that his statements made under oath during his plea hearing were true, and Millender must overcome a heavy, but not insurmountable, burden of proving those statements false.  *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

In support of his burden, Millender claims that his attorney never provided him with full copies of the June 19 plea agreement and that additional terms concerning restitution and cooperation were added to the agreement to which he had originally agreed two days before.[2]  However, Millender's testimony on these points is directly contradicted by Fowler, who testified that Millender was provided with full copies of the relevant agreements, that they discussed the terms of the plea agreement and Millender stated that he read and understood it, and that, with respect to Millender's cooperation obligations in particular, Fowler told Millender that he may have to testify for the government before a grand jury or at trial.  The district court was entitled to credit Fowler's testimony on these points. *See Buckles*, 843 F.2d at 472.  In addition, Millender's testimony at the plea-withdrawal hearing reflects that when Millender entered his guilty plea, he was aware of the amount of restitution for which he would be responsible. Specifically, he testified that he learned one hour before the hearing that the restitution amount

---

[2] The government introduced a copy of the earlier agreement Millender was referencing, which appears to be no different from the final agreement in any material respect.

8

was $18,915. In sum, the record supports the district court's conclusion that Millender knew and understood the terms of the plea agreement.

The district court also rejected as unconvincing Millender's claim that Fowler coerced him into pleading guilty. Like his claim of lack of awareness of certain terms in the plea agreement, this claim, too, is contradicted by Millender's statements under oath during the plea colloquy. Millender stated at the plea hearing that he was satisfied with Fowler's representation in the case and that no one had attempted to force him to plead guilty. He also confirmed that he was in fact guilty of acquiring stolen identities for the purpose of filing fraudulent income-tax returns. Millender has not overcome the strong presumption that these statements are false.

Millender and Fowler met alone to discuss the case at least four times for one hour each time, and according to Fowler's testimony, he and Millender discussed the circumstances surrounding the search of his vehicle and his arrest. They discussed filing a motion to suppress and the likelihood of suppression, but, according to Fowler, the government had indicated that if Millender sought to fight the evidence, it would take the case to a grand jury and indict Millender on other charges besides the aggravated-identity-theft count. This in turn would have increased Millender's possible sentence. Fowler testified that Millender "didn't want to risk that." In view of this testimony, the district court reasonably

9

concluded that Millender made a strategic decision not to pursue suppression. The fact that Fowler advised Millender to plead guilty in order to avoid additional charges is not coercive. *Buckles*, 843 F.2d at 472 ("A defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty." (internal quotation marks omitted)).

Millender's principal contention is that his guilty plea was not knowing and voluntary because Fowler "failed to fully and completely investigate the illegality of the search" and gave ineffective assistance as a result. *See McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) ("The guilty plea is not knowing[] and voluntar[y] . . . if the defendant does not receive reasonably effective assistance of counsel in connection with the decision to plead guilty." "The guilty plea does not relieve counsel of the responsibility to investigate potential defenses so that the defendant can make an informed decision." (citation omitted). Had Fowler conducted a full investigation, Millender asserts, Millender would not have entered a plea but instead would have elected to proceed with a motion to suppress, which, if successful, would have ended the case.

Millender's claim of ineffective assistance of counsel is governed by the familiar framework established in *Strickland v. Washington*, 466 U.S. 668, 104 S.

Ct. 2052 (1984).[3]  To prevail on a claim of ineffective assistance, a defendant must show both deficient performance and prejudice.  *Winthrop-Redin v. United States*, 767 F.3d 1210, 1219 (11th Cir. 2014).  With respect to deficient performance, we strongly presume that counsel rendered adequate assistance.  *Id.*  An attorney's "total failure to conduct pre-trial discovery," however, may be considered deficient performance.  *Kimmelman v. Morrison*, 477 U.S. 365, 386-87, 106 S. Ct. 2574, 2589 (1986).  With respect to prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Winthrop-Redin*, 767 F.3d at 1219.  In the context of a challenged guilty plea, this means the defendant must show that, but for counsel's errors, he would not have pled guilty.  *Id.*

Here, Millender has not shown that counsel performed deficiently.  It appears undisputed that filing a motion to suppress could have triggered severe and

---

[3] We normally do not address claims of ineffective assistance of counsel on direct review unless the district court entertained the claim and the record is sufficiently developed.  *United States v. Patterson*, 595 F.3d 1324, 1328-29 (11th Cir. 2010).  Here, we find that Millender's claim is properly before us because it was raised in Millender's motion to withdraw his guilty plea, the district court heard testimony from Millender and Fowler on the issue of whether Fowler's failure to investigate the circumstances of Millender's arrest rendered his guilty plea unknowing and involuntary, and the parties on appeal cite to and base their arguments with respect to this issue on ineffective-assistance caselaw.  We consider the *Strickland* analysis to be subsumed within the broader analysis of whether Millender has shown a fair and just reason for withdrawal of his guilty plea, but we apply the standards of *Strickland*, in line with the parties' arguments on appeal, to determine whether Fowler's allegedly deficient investigation shows that the guilty plea was unknowing or involuntary.  *See McCoy*, 804 F.2d at 1198.

11

negative consequences flowing to Millender.[4] *Cf. Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (finding deficient performance because "filing a motion to suppress could have had no possible negative impact on Green's defense and, if granted, would have almost assuredly precluded his conviction"). The record also indicates that Fowler was aware of the facts and circumstances surrounding the search of Millender's vehicle and his arrest. Millender testified that he told Fowler about the search and arrest, and counsel testified that he spoke to the officers involved. According to Fowler's testimony, Millender did not want to risk pursuing suppression if it would increase his potential sentence. Millender does not identify with any particularity how counsel was mistaken about either the facts of the search and arrest or the applicable law. Under these circumstances, it does not strike us as unreasonable for Fowler to have advised Millender to plead guilty without spending additional time investigating more fully the circumstances of the search and arrest, such as trying to obtain a purported video of the incident.

In any case, even if we assume, *arguendo*, that Fowler's performance was deficient, Millender has not shown that, but for counsel's error, he would not have pled guilty. *See Winthrop-Redin*, 767 F.3d at 1219. We are unconvinced that

---

[4] For example, the government may have been able to file mail or wire-fraud charges under 18 U.S.C. §§ 1341 and 1343. Had it done so, and had Millender been convicted of even one such charge, he would have faced a sentence of up to 20 years' imprisonment, which would have been required to have been imposed consecutively to the mandatory two-year penalty for aggravated identity theft to which Millender was sentenced under the plea agreement. *See* 18 U.S.C. § 1028A(b).

12

further investigation by Fowler would have altered Millender's decision to plead guilty.  The facts Fowler would have discovered through additional investigation are unknown and therefore too speculative to show a reasonable probability of a different result.  *See Harrison v. Richter*, 562 U.S. 86, 112, 131 S. Ct. 770, 792 (2011) ("The likelihood of a different result must be substantial, not just conceivable.").

Millender also has not shown that he would have been likely to prevail on his theory of suppression, such that it would have made sense, in keeping with Fowler's understanding of Millender's motivations, to risk indictment and a longer sentence in order to pursue suppression.  In fact, Millender makes no arguments on appeal about the merits of a potential suppression claim.  Instead, he asserts that it was improper for the court to determine that suppression was unlikely under the facts he alleged.  But given that the viability of a motion to suppress was material to matters before the court at the plea-withdrawal hearing, the court did not err in reaching this issue based on Millender's own testimony.

In view of Fowler's testimony at the plea-withdrawal hearing and Millender's statements under oath during the earlier plea colloquy, the district court did not act unreasonably or arbitrarily in concluding that, under the totality of the circumstances, Millender received close assistance of counsel and his guilty

13

plea was made knowingly and voluntarily.[5]  *See Buckles*, 843 F.2d at 472-44. Millender has not shown that Fowler's performance, as it relates to his investigation of the circumstances of Millender's arrest and his advice to plead guilty, was deficient or that Millender was prejudiced by any deficiency. And contrary to Millender's contention, the district court did not give undue weight to considerations of judicial resources and prejudice to the government. The district court expressly stated—and nothing about its order indicates otherwise—that neither judicial resources nor prejudice to the government weighed heavily in its analysis.

## IV.

In sum, Millender has not shown that he was denied effective assistance of counsel, and the district court did not abuse its discretion in denying Millender's motion to withdraw his guilty plea. Therefore, we affirm.

**AFFIRMED.**

---

[5] Millender also contends for the first time in his reply brief that his plea was not knowing and voluntary because he did not know the "exact charges" and sentence he would face had he been indicted. We generally do not consider arguments raised for the first time in a reply brief. *United States v. Britt*, 437 F.3d 1103, 1104-05 (11th Cir. 2006). In any case, this contention is meritless. Aside from the impossibility of discussing the "exact" charges in an indictment that has not issued, Fowler testified that he reviewed potential guideline calculations with Millender, and there is no indication that knowledge of an exact possible sentence, as opposed to an estimated possible sentence, would have affected Millender's decision.

14